**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GLENN L. MARTIKEAN** | ) | |
| **ID # 06601-027,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No.  3:11-CV-1774-M-BH** |
| | ) | |
| **UNITED STATES OF AMERICA, et al.,** | ) | |
| **Defendants.** | ) | **Referred for Pretrial Management** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case has been automatically referred for pretrial management.  Based on the relevant filings and applicable law, Plaintiff's claims against the individual defendants should be dismissed, and his claims against the United States should proceed.

**I.  BACKGROUND**

Plaintiff Glenn L. Martikean (Plaintiff) sues the United States and numerous employees of the Federal Correctional Institute at Seagoville, Texas (FCI-Seagoville), and Parkland Hospital in both their individual and official capacities. (*See* Compl. at 2-8; Magistrate Judge's Questionnaire[1] (MJQ) Ans. 2-10).  He asserts constitutional claims against the employees pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), negligence claims against the United States  pursuant to the Federal Tort Claims Act (FTCA), and claims for violations of 18 U.S.C. § 4042, the Code of Federal Regulations, and internal Bureau of Prisons (BOP) directives. (Compl. at 1, 8-9; MJQ Ans. 1, 3-9, 11).  Plaintiff claims that he has received inadequate care for a detached retina in his left eye and basal cell carcinoma on his nose, and that the defendants failed to properly handle his medical records. *Id*.  He seeks monetary damages.  (MJQ Ans 14).

---

[1]  Plaintiff's answers to the questions in the MJQs constitute an amendment to the complaint.  *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

## II.  PRELIMINARY SCREENING

Plaintiff is a federal prison inmate who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."  *Id.* at 327.  A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## III.  *BIVENS* CLAIMS

Plaintiff sues the individual defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Compl. at 2-4; MJQ Ans. 3-10).  In *Bivens*, the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court.  *Bivens* is "the counterpart to 42 U.S.C. § 1983," and it extends the protections afforded under § 1983 to parties injured by federal actors. *Chapman v. United States*, No. 4:06-CV-0426-Y, 2006 WL 3831227, at *1 n.8 (N.D. Tex. Dec. 27,

2006); *see also Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005) (per curiam).  Unless the defendants have deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States, however, a plaintiff has no viable claim under *Bivens*.  *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) (recognizing that "[a] *Bivens* action is analogous to an action under § 1983— the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials").

A.      **Official Capacity Claims**

A *Bivens* action only provides a remedy for victims of constitutional violations by government officers in their individual capacities; it does not provide for a cause of action against the United States.  *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999).  Nor may a *Bivens* action be brought against a federal agency.  *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Moore v. United States Dep't of Agriculture*, 55 F.3d 991, 995 (5th Cir. 1995). Claims against federal employees in their official capacities based on alleged constitutional violations are also barred under *Bivens* because they are equivalent to claims against the federal agencies who employ those employees.  *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). This is because the purpose of a *Bivens* cause of action is to deter a federal officer from violating a person's constitutional rights.  *Meyer*, 510 U.S. at 485; *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001).  Because a *Bivens* action cannot be brought against individual employees in their official capacities, Plaintiff has not alleged a viable *Bivens* claim against any individual employee in an official capacity.[2]

---

[2] The Parkland Hospital doctors who treated Plaintiff are considered federal actors for purposes of *Bivens* because their actions in providing medical care to a federal prisoner is fairly attributable to the federal government. *See West v. Atkins*, 487 U.S. 42, 49-50 (1988) (holding that a physician under contract with the state to provide medical services to inmates of a state prison acted under color of state law under § 1983).

B.      **Medical Care Claims**

Plaintiff alleges that certain FCI Seagoville employees and Parkland Hospital employees have shown deliberate indifference to his need for medical care for a detached retina and basal cell carcinoma.

The Constitution requires humane conditions of confinement, which includes the receipt of adequate medical care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Prison officials violate this requirement only when (1) the deprivation is objectively and sufficiently serious such that the act or omission results in the denial of "the minimal civilized measure of life's necessities" and (2) the official had a culpable state of mind.  *Id.* at 834 (citations omitted).  The objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  To satisfy the second component, the officials must be deliberately indifferent "to a substantial risk of serious harm to an inmate."  *Farmer*, 511 U.S. at 828.  This state of mind requires more than negligence but less than intent to cause harm or knowledge that harm will result from the acts or omissions.  *Id.* at 835.  An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

This state of mind "is an extremely high standard to meet."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted).  An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious

medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

1.    **Wardens**

Plaintiff sues Wardens Cruz and Berkebile for failing "through acquiescence" to timely file his administrative remedies claims regarding his medical care and for failing to have employees they supervise provide him his medical records from other federal prisons where he had been incarcerated.  He claims that this failure caused delays in seriously needed medical attention.  He likewise sues Associate Warden Ivory for not investigating to ensure that the health services department updated his file with previous medical records.  (MJQ Ans. 3, 4, 5).

A *Bivens* action must be premised upon the personal involvement of the named defendants. *See FDIC v. Meyer*, 510 U.S. 471, 485 (1994) (explaining that it "must be remembered that the purpose of *Bivens* is to deter *the officer*"); *Guerrero-Aguilar v. Ruano*, 118 Fed. App'x 832 (5th Cir. 2004) (per curiam).  Under *Bivens*, an individual cannot be held liable under a theory of respondeat superior.  *Ashcroft*, 129 S.Ct. at 1948.  Instead, a supervisory federal employee and/or official may be held liable only where he has personal involvement in the acts that caused the deprivation of a constitutional right or if he implements or enforces a policy that causally results in a deprivation of constitutional rights.  *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010); *Cronn v. Buffington*, 150 F.3d 538, 544-45 (5th Cir. 1998).  Here, Plaintiff has not alleged either personal involvement by these wardens with regard to acquiring his medical records or addressing his administrative claims, or that they implemented a policy that causally resulted in the violation of his rights.  *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (recognizing that supervisory liability exists without overt personal involvement if supervisory officials implement a deficient

5

policy that is the moving force behind a constitutional violation).   To the extent that Plaintiff is

arguing that these officials did not properly follow their own internal grievance procedures, he does

not have a federally protected interest in having a grievance or complaint resolved to his satisfaction.

*Geiger v. Flowers*, 404 F.3d 371 (5th Cir. 2005).   Furthermore, a failure to respond to an inquiry

does not rise to the required level of personal involvement for liability.  *See Amir-Sharif v. Valdez*,

2007 WL 1791266, slip op. at  *2 (N.D. Tex. June 6, 2007) (holding that no liability under § 1983

had been alleged because a failure to take corrective action in response to a grievance does not rise

to the level of personal involvement); *Praylor v. Partridge*, 2005 WL 1528690, slip op. at *2 (N.D.

Tex. June 28, 2005) (same); *Anderson v. Pratt*, 2002 WL 1159980, slip op. at *3 (N.D. Tex. May

29, 2002) (holding that a viable *Bivens* claim against a warden had not been alleged because denying

an administrative grievance does not rise to the level of personal involvement, especially where the

grievance was filed after the events which allegedly violated the plaintiff's civil rights).   Plaintiff

has not stated a viable claim against Defendants Cruz, Berkebile, or Ivory based on their supervisory

positions.

### 2.      HSA McGough

Plaintiff sues Health Service Adminstrator McGough because: 1) he did not reply to a

medical records request in a reasonable time; 2) he either did not obtain Plaintiff's records from

previous federal prisons or received them and did not provide them to Plaintiff; and 3) because he

did not follow the prison's procedures in obtaining these records.  (MJQ Ans. 6). However, there

is no *constitutional* requirement that an inmate be given the right to review or obtain his prison

medical records.  *Ramirez v. Delcore*, 2007 WL 2142293 (S.D. Tex. July 25, 2007), *citing Sandlin*

*v. Conner*, 515 U.S. 472, 484 (1995)(holding that the liberty interests created by the Due Process

clause are limited to freedom from restraint which imposes "atypical and significant hardship" on the inmate). To the extent that Plaintiff is asserting that McGough's failure to obtain these records prevented him from pursuing his legal claims in court, he must plead facts showing that his efforts to pursue a legal claim have been hindered and that his position as a litigant was actually prejudiced in order to state a claim of denial of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 351-52, 356 (1996). Plaintiff has not alleged these facts, and his filings show that he is able to articulate the basis for his claims without the benefit of all of his medical records. He has failed to allege a viable *Bivens* claim against this defendant.

### 3.      Unnamed Defendants

In his initial complaint, Plaintiff listed numerous John and Jane Does as defendants. (Compl. at 8). He has clarified that the two unnamed defendants located in the Northern District of Texas are dermatologists who work for Parkland Hospital. (MJQ Ans. 2). He claims that these doctors were deliberately indifferent to his medical needs because they removed a basal cell carcinoma from his nose on October 14, 2008, via a biopsy procedure without the help of a pathologist. Plaintiff alleges that the doctors should have known that this was not the appropriate treatment based on their training, the appearance and the size of the lesion, and the information he provided to them. (MJQ Ans. 8, 9).[3] He also claims that because the biopsy was unsuccessful and the lesion was not completely removed, another more extensive procedure was performed on January 29, 2009, and he still has a growth on the tip of his nose. He was examined in January of 2011 and told that a carcinoma may remain, a biopsy was performed on this growth in February of 2011, and he will

---

[3] Plaintiff explains that he was examined by another doctor in Florida prior to being transferred to Texas, that this doctor stated that he was almost certain that the growth on Plaintiff's nose was basal cell carcinoma, and that he recommended that a more extensive surgery be performed with the assistance of a pathologist. (Compl. at 16-17).

have to have yearly examinations of the growth for five years. (Compl. at 24; MJQ Ans. 1).

Plaintiff has failed to allege that these doctors were deliberately indifferent. He disagrees with the medical care he received and believes a more extensive surgery under general anesthetic would have been appropriate, as opposed to the in-office procedure.[4] Neither an incorrect diagnosis nor unsuccessful medical treatment is deliberate indifference, however. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Domino*, 239 F.3d at 755. Plaintiff received medical treatment from the defendants on the day that he was sent to Parkland Hospital for treatment. That it was not the treatment recommended by a previous doctor and that it was ultimately unsuccessful does not give rise to a *Bivens* action. *See Taylor v. Howards*, 268 F.3d 1063, *1 (5th Cir. July 17, 2001) (an unsuccessful surgery is not deliberate indifference).

### 4.      Clinical Director Dr. Capps

Plaintiff alleges that Clinical Director Dr. Capps was deliberately indifferent with regard to the medical care he provided for basal cell carcinoma and a detached retina.

#### a.      Carcinoma

Plaintiff asserts that Dr. Capps did not investigate Plaintiff's contention that a previous doctor had recommended a particular procedure, and that Dr. Capps did not have that doctor's report in his file. Instead, Dr. Capps sent Plaintiff to Parkland Hospital's dermatology department, where the wrong procedure was used. (MJQ Ans. 7). After the correct procedure was subsequently

---

[4] This procedure was performed in October of 2008, outside the relevant statute of limitations to bring such a claim of two years from the time the cause of action accrued. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); *Hatchet v. Nettles*, 201 F.3d 651, 653 (5th Cir. 2000). The Court assumes for purposes of judicial screening only, and without deciding, that Plaintiff did not know the facts supporting this claim until January 21, 2011, when he saw another doctor and was informed that the growth on his nose could again be basal cell carcinoma. (Compl. at 24). *See Albertson v. T.J. Stevenson*, 749 F.2d 223, 228- 229 (5th Cir. 1984) (holding that a cause of action does not accrue until the plaintiff discovers, or should have discovered, both the injury and its cause).

performed in January of 2009, Dr. Capps did not ensure that Plaintiff had pain medication for the ride home or that the prison staff was providing proper aftercare, such as cleaning and dressing the wound.  It later became infected, and antibiotics had to be prescribed.  He also contends that he was left with a large scar as a result of the unsuccessful procedure.  (Compl. at 19-20; MJQ Ans. 7).

Plaintiff acknowledges that he saw Dr. Capps on September 9, 2008, five days after he arrived at FCI-Seagoville, and that he advised him at that time of his ongoing issues with a growth on his nose and his eye.  (Compl. at 18).  He also acknowledges that after the meeting, Dr. Capps made an appointment with an outside doctor to have the growth on his nose examined.  Plaintiff was sent to the dermatology department of Parkland Hospital on October 14, 2008, a little over a month later, when the procedure was performed.  *Id*. at 18-19.  Plaintiff also acknowledges that when he approached Dr. Capps after the subsequent surgery because the pain medication he had been prescribed by a prison employee wasn't working, Dr. Capps prescribed him a stronger pain medication. (doc. 12 at 42).

Plaintiff's documents reflect that he received medical care for carcinoma shortly after his arrival at FCI-Seagoville and continues to receive treatment for it.  He is complaining about the type of medical treatment he received.  Mere disagreement with the level and type of medical treatment is insufficient to state a claim, however.  *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001).  Failed treatment also does not constitute deliberate indifference to medical care.  *Domino*, 239 F.3d at 755.  Nor is a failure to review prior medical records prior to providing treatment deliberate indifference.  *Baez v. ICE*, 2007 WL 2438311, *2 (5th Cir. Aug. 22, 2007) (the failure to contact a prior doctor is not deliberate indifference where the inmate received medical treatment for his condition); *Stewart v. Murphy*, 174

F.3d 530, 535-56 (5th Cir. 1999) (the failure by a doctor to read notes made by nurses and learn of and treat an infection might constitute negligence, but is not deliberate indifference); *Kirby v. Johnson*, 243 Fed. App'x 877, 879 (5th Cir. 2007) (the abrupt discontinuation of psychiatric medicine without examination of the inmate's medical records was not deliberate indifference). A failure to provide additional treatment may show medical malpractice, but it does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino*, 239 F.3d at 756.

Plaintiff's complaint that he would not have a scar if the surgery recommended by the Florida doctor been performed is also about the type of treatment he received. The failure to follow the recommendation of another doctor is not deliberate indifference. *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1998).

Plaintiff also complains about the subsequent failure to provide pain medication and proper aftercare for the wound. At most, he is alleging that Dr. Capps and other prison officials were negligent in failing to ensure that he had pain medication immediately after surgery and that he received proper aftercare. Plaintiff does concede that when he approached Dr. Capps, he received stronger pain medication and was provided antibiotics for an infection. Plaintiff has failed to allege sufficient facts rising to the level of deliberate indifference because he has not alleged that Dr. Capps refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that showed a disregard for his serious medical needs. *See Johnson v. Treen*, 759 F.2d at 1238.

  **b.**  <u>**Detached Retina**</u>

As for the detached retina, Plaintiff acknowledges that he met with Dr. Capps on September

9, 2008, five days after he arrived at the prison.  After Plaintiff told him about the vision problems in his left eye, Dr. Capps immediately scheduled an appointment to have his eyes examined. (Compl. at 18).  On October 15, 2008, Plaintiff saw an ophthalmologist who verified that the retina in his left eye had detached, and on October 24, 2008, Plaintiff had retina surgery at a local hospital. He acknowledges that he had several post-operative visits with the surgeon, that he has had two subsequent cataract surgeries on the same eye, and that he was told by his opthamologist after these surgeries that only new glasses were needed.  (Compl. at 19, 23).[5]

Plaintiff alleges that Dr. Capps scheduled a normal doctor's visit rather than an urgent care visit despite being informed that Plaintiff had been experiencing loss of vision and suspected that his retina had detached.  (MJQ Ans. 7).  He claims that he was not seen by an eye doctor until thirty-six days after he met with Dr. Capps, that his retina was not repaired until fifty-eight days after he felt that it had detached, that repair should have occurred within two to seven days after detachment to prevent permanent damage, and that this delay exposed him to deterioration leading to partial or complete blindness. (MJQ Ans. 7).[6]  Plaintiff provides medical literature stating that if a detached retina is within two to seven days after detachment, the "likelihood that sight will improve is usually good."  If it has been detached for a longer time, "the likelihood that sight will improve is decreased." (doc. 12, Ex. S-2).  He also provides a letter from the doctor who performed his eye surgery dated October 19, 2008, recommending surgical repair of the detached retina in his left eye.

---

[5]  Plaintiff asserts that as of the time he filed his complaint, he had not yet been provided the new glasses needed due to the surgical changes in his left eye.  (Compl. at 26).

[6]  This eye surgery was performed in October of 2008, more than two years before Plaintiff filed his suit.  The Court will again assume, without deciding, that Plaintiff did not know all of the facts to support his claim later when his eye was examined after subsequent surgeries and that, therefore, this claim is not barred by the relevant statute of limitations. *See Piotrowski v. City of Houston*, 237 F.3d at 576; *Albertson v. T.J. Stevenson*, 749 F.2d at 228- 229.

The letter notes that Plaintiff had cataracts in both eyes, and that his corrected vision was 20/20 in the right eye and 20/30 in the left. (doc. 12, Ex. W).  Plaintiff also claims that he currently has a loss of peripheral vision and night blindness in his left eye. (doc. 12 at 90).[7]

A delay in medical care is a constitutional violation only if there has been deliberate indifference that results in substantial harm, which Plaintiff has not alleged.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  Plaintiff acknowledges that he believes that his retina detached before he was imprisoned at FCI-Seagoville. (MJQ Ans. 6).  He faults Dr. Capps for failing to ensure that he received urgent medical care because his retina had detached thirteen days prior to their meeting, but he fails to allege either deliberate indifference in the delay of care or that substantial harm has resulted.  Dr. Capps immediately scheduled an appointment when he learned of Plaintiff's eye problems.  Dr. Capps was not responsible for either the time period before he met with Plaintiff or the time period between when the detached retina was formally diagnosed and the surgery was performed.  While Plaintiff asserts that the surgery should have been done within seven days of the detachment, he acknowledges that this window had passed before he met with Dr. Capps.  He fails to allege facts supporting a claim that Dr. Capps, in not scheduling an urgent care visit for his eye, knew of and disregarded an excessive risk to his health.  Plaintiff has therefore failed to

---

[7] Plaintiff has also included a document entitled "Supplemental Fact" containing statements about the retina in his right eye detaching in September of 2011, and the surgery that he had to repair it on September 23, 2011.  He complains that personnel at the prison did not listen to his complaints of loss of vision, and that he received an initial incorrect eye examination.  He does acknowledge that: 1) he was seen by Dr. Capps on September 12, 2011, and Plaintiff explained the vision problems in his right eye and an appointment with an eye doctor was made; 2) his eye was examined on September 14, 2011, albeit in an incorrect manner; 3) Plaintiff felt his retina detach on September 17, 2011; 4) his eye was examined at the prison on September 19, 2011, when the detachment was seen; 5) he saw an eye doctor on September 21, 2011, who confirmed the detachment; and 6) his retina was reattached on September 23, 2011. (doc. 12 at 85-90).  To the extent that Plaintiff is attempting to amend his complaint to add a claim for this retinal detachment, he has not alleged a viable claim because he has not alleged deliberate indifference to his medical care.  Notably, Plaintiff's right retina was attached within two to seven days, as he alleges was required to prevent permanent damage.  To the extent that Plaintiff is asserting a claim over the treatment of his right eye, it is also without merit.

allege deliberate indifference.  *See Farmer*, 511 U.S. at 837.

Finally, Plaintiff alleges that he has continuing vision problems in his left eye, but he also acknowledges that he has had two cataract surgeries on that same eye, and that he has been told by his doctor that only new glasses were needed.  He has therefore failed to allege that any substantial harm has occurred as a result of deliberate indifference by Dr. Capps.  He received treatment for his detached retina in a timely manner and continues to receive treatment for ongoing eye problems. Plaintiff's allegations are not sufficient to state a violation of his constitutional rights by Dr. Capps.

## C.    Other Claims

Finally, Plaintiff's filings may be liberally construed as asserting *Bivens* claims against the individual defendants based on their alleged failure to follow federal regulations and internal procedures setting forth employee responsibilities.  (MJQ Ans. 11).  An alleged failure to follow prison rules and regulations does not give rise to a constitutional violation, however.  *Taylor v. Howards*, 268 F.3d 1063, *1 (5th Cir. July 17, 2001), *citing Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).  Any *Bivens* claims based on alleged violations of these statutes are therefore without merit and should also be dismissed.

## V.  FEDERAL TORT CLAIMS ACT

Plaintiff also sues under the FTCA, claiming that employees of FCI Seagoville have been negligent in his medical care. (Compl. at 1-2; MJQ Ans.1).  In the FTCA, Congress waived the United States' sovereign immunity for claims arising from torts committed by federal employees. 28 U.S.C. §§ 1346(b)(1), 2671-2680; *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008).

> The FTCA gives federal district courts jurisdiction over claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances

where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Sheridan v. United States*, 487 U.S. 392, 398 (1988) (quoting 28 U.S.C. § 1346(b)).

### A.   Claims against Individual Defendants

Plaintiff names both individuals and the United States as defendants in his suit. (Compl. at 2-8; MJQ Ans. 1).  The only proper defendant in an FTCA action is the United States; individual defendants cannot be sued under the FTCA in their individual capacities.  *See* 28 U.S.C. § 2679(a); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988).  Any claims against them in their official capacities are treated as a suit against the United States.  *Connor v. Matthews*, 134 F.Supp.2d 797, 799 (N.D.Tex. 2001).  To the extent that he is attempting to sue the individual defendants in either their official or individual capacities under the FTCA, Plaintiff has failed to state a viable FTCA claim against them.

### B.   Claims against United States

As for Plaintiff's FTCA claims against the United States, it is not apparent from the complaint that his claims fall within any of the exceptions set forth in 28 U.S.C. § 2680 that limit the liability of the United States.  *See Ashford v. United States*, 511 F.3d 501, 504-05 (5th Cir. 2007).  Plaintiff alleges that he has exhausted his administrative remedies as required by the FTCA. (Compl. at 1-2; MJQ Ans. 1).  *See* 28 U.S.C. § 2675(a);  *McNeil v. Unites States*, 508 U.S. 106, 112-13 (1993); *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995).  His FTCA claims against the United States therefore survive judicial screening and should be allowed to proceed.

## VI.  OTHER CLAIMS

Plaintiff also contends that the defendants violated 18 U.S.C. § 4042, various federal regulations, and some of the BOP's internal procedures.  Section 4042 provides, in part, that the

duties of the BOP include the "safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4202(a)(2).  While the Fifth Circuit has not yet ruled on whether this statute creates a separate cause of action, other circuits have determined that it does not create a cause of action against either the BOP or its employees.  *See Harper v. Williford*, 96 F.3d 1526, 1528 (D.C.Cir. 1996); *Chinchello v. Fenton*, 805 F.2d 126, 134 (3rd Cir. 1986); *Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969).  These cases are persuasive.  Section 4042 sets out the duties of the BOP, but it does not create a separate cause of action outside of *Bivens* or the FTCA.  *See Thomas v. Jeter*, 2010 WL 2381575, *3 (N.D. Tex. June 8, 2010) (citing other circuits in holding that § 4202 does not create a separate cause of action); *Muhammed v. United States*, 6 F.Supp.2d 582, 594 (N.D. Tex. 1998) (holding that an inmate may bring a FTCA claim based on a claim that the BOP has breached its duty under § 4042(a)).  Any claims based on alleged violations of these statutes are without merit and should also be dismissed.

## VII.  RECOMMENDATION

Plaintiff's claims against all individuals should be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his FTCA claims against the United States should proceed.

**SIGNED this 6th day of April, 2012.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE