**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| GLENN L. MARTIKEAN, | ) | |
|     ID # 06601-027 | ) | |
|         Plaintiff, | ) | No. 3:11-CV-1774-M-BH |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, et. al, | ) | Referred to U.S. Magistrate Judge |
|     Defendants. | ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this case has been automatically referred for pretrial management. Before the Court is *Defendant's Motion to Strike Plaintiff's Expert Witness*, filed February 27, 2014 (doc. 91). Based on the relevant filings and applicable law, Defendant's motion to strike should be **GRANTED**.

### I. BACKGROUND

On July 20, 2011, Glenn Martikean (Plaintiff) filed this action against the United States, numerous Bureau of Prison (BOP) employees at four different prison units in four different states, including the Federal Correctional Institution at Seagoville, Texas (FCI-Seagoville), and employees of Parkland Hospital.[1] (*See* Doc. 2 at 10-22, 27-35.)[2] He claimed that he received inadequate and negligent care for a detached retina in his left eye and basal cell carcinoma on his nose, and that the defendants failed to properly handle his medical records. (*Id.* at 1, 8-9; Magistrate Judge's Questionnaire[3] (MJQ) Ans. 1-10.) Plaintiff asserted constitutional claims against the BOP and

---

[1] The claims against BOP employees in other states were transferred to the appropriate districts on October 18, 2011. (*See* doc. 7.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3] Plaintiff's answers to the questions in the MJQs constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No.*, 153, 23 F.3d 94, 97 (5th Cir. 1994).

Parkland employees pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), negligence claims against the United States pursuant to the Federal Tort Claims Act (FTCA), and claims for violations of 18 U.S.C. § 4042, the Code of Federal Regulations, and internal Bureau of Prisons (BOP) directives. *Id.* On June 4, 2012, the Court dismissed all of Plaintiff's claims except for the FTCA claims against the United States. (*See* docs. 15, 30-31).

On February 25, 2013, Plaintiff mailed his motion to appoint expert witness under "Fed. R. Civ. P., Rule 706", with an attached sworn affidavit by a federal inmate, Dr. George E. Kabacy (Dr. Kabacy). (Doc. 48.) The motion to appoint an expert witness was denied on March 1, 2013. (Doc. 50 at 1-2.) Plaintiff attached the same affidavit to his motion for mediation, which he mailed on March 7, 2013. (Doc. 57.) The motion for mediation was denied on March 13, 2013. (Doc. 59.)

On March 25, 2013, the United States (Defendant) moved for summary judgment, alleging that Plaintiff had failed to designate expert witness as required under Texas law when asserting a medical malpractice claim. (Doc. 63.) Plaintiff responded that he had designated an expert witness, pointing to his motions to appoint an expert witness and for mediation, and he also submitted an updated affidavit from Dr. Kabacy with his opposition to Defendant's summary judgment motion. (Doc. 75.) The Court liberally construed the *pro se* Plaintiff's prior filings as a designation of an expert witness and denied Defendant's summary judgment motion. (Doc. 79.) Defendant moved for reconsideration, and in the alternative, for an extension of time to file objections to Plaintiff's expert witness. (Doc. 81.) The motion for reconsideration was denied, but Defendant was granted an extension until April 7, 2014, to file objections to Plaintiff's expert witness. (Doc. 86.)

On February 27, 2014, Defendant moved to strike Plaintiff's expert witness, arguing that Dr.

2

Kabacy is not currently a "physician" as required under Texas law, and that his opinions are not sufficiently reliable under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (Doc. 91 at 3-4.) Plaintiff filed a response on April 23, 2014, (doc. 98). Defendant did not file a reply brief. The motion is now ripe for recommendation.

## II. OBJECTION

Plaintiff objects that the probative value of Defendant's evidence in support of its motion to strike is substantially outweighed by unfair prejudice under Federal Rule of Evidence 403. (Doc. 98 at 15-17.) Defendant submitted two exhibits: (1) a copy of the Oregon Medical Board Default Final Order (Medical Board Order), which revoked Dr. Kabacy's medical license on October 16. 2008, (doc. 92 at 3-6), and (2) Public Information Inmate Data on Dr. Kabacy (Inmate Data) dated February 10, 2014, (*id.* at 7-9).

Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Plaintiff argues that the key issue is whether Dr. Kabacy had a license to practice medicine, and that the unfair prejudice from Dr. Kabacy's criminal history, which is shown in both of Defendant's exhibits, substantially outweighs any probative value. (Doc. 98 at 15-16.) He also contends that Dr. Kabacy's sex offense conviction does not relate to the truthfulness of his opinions. (*Id.* at 16.)

Whether Dr. Kabacy holds a medical license is one of the threshold qualifications that must be considered before he can serve as an expert witness in a medical malpractice case. *See* Tex. Civ. Prac. & Rem. Code § 74.401(a), (g).[4] The Medical Board Order provides information regarding the

---

[4]Courts apply the state statutory requirements on the qualification of an expert witness in medical malpractice cases. *See Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993) (applying Tex. Rev. Civ. Stat. Ann. Art. 4590i § 14.01(a)(1), recodified in Tex. Civ. Prac. & Rem. Code Ann. § 74.401); *see also Pesantes v. United States*, 621 F.2d 175, 179 (5th Cir. 1980) (ruling that for the FTCA claims, the district court was required to apply the

status of Dr. Kabacy's medical license, and any information other than the status of Dr. Kabacy's medical license is inapplicable to the question of whether he is qualified to serve as an expert witness under § 74.401(a) and (g). *Id.* Its probative value in this non-jury case therefore is not substantially outweighed by unfair prejudice. The Inmate Data shows that Dr. Kabacy was incarcerated, and therefore not practicing medicine, at the time that Plaintiff's claims arose. (Doc. 92 at 7-9.) Its probative value therefore is also not substantially outweighed by unfair prejudice for purposes of this motion. Plaintiff's objection to both documents is **OVERRULED**.

### III. MOTION FOR RECONSIDERATION

Plaintiff objects to the order granting Defendant an extension of time to file objections to his expert. (Doc. 98 at 3-10.) His objections are liberally construed as a motion for reconsideration.

The Federal Rules of Civil Procedure do not expressly recognize a "motion for reconsideration". *Cressionnie v. Hample*, 184 Fed. App'x 366, 369 (5th Cir. 2006), citing *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990), *abrogated on other grounds by Little v. Liquid Air Corp.,* 37 F.3d 1069, 1076 n. 14 (5th Cir.1994). Motions to reconsider that challenge a prior judgment on the merits are treated as arising under either Rule 59(e) or Rule 60(b), depending on the timing. *See id.* A motion to reconsider an interlocutory order is considered under Rule 54(b), which provides courts "the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *See Iturralde v. Shaw Group, Inc.*, 512 F. App' x 430, 432 (5th Cir. 2013) (quoting *Melancon v. Texaco, Inc.,* 659 F.2d 551, 553 (5th Cir. Unit A 1981)); *see also Swope v. Columbian Chem. Co.,* 281 F.3d 185, 193 (5th

---

state's qualification requirements for standard-of-care experts.).

Cir.2002).[5] Courts may reconsider an interlocutory order for any reason deemed sufficient, even in the absence of an intervening change in or clarification of the law. *Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, (5th Cir. 2012) (citing *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 171 (5th Cir.2010)).

Plaintiff contends that the order granting Defendant an extension of time modified the scheduling order under Rule 6(b). (Doc. 98 at 7-10.) He argues that under Rule 6(b), an extension of time is permitted only when there was excusable neglect, and Defendant's explanation that it did not know Plaintiff had designated an expert does not show excusable neglect. (*Id.* at 7-8.)

Federal Rule of Procedure 6(b)(2) provides in relevant part:

> When an act may or must be done within a specific time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b). The determination of what constitutes "excusable neglect" is an equitable one. *See Pioneer Inv. Serv. Co. v. Brunswick Assoc. Limited P'ship*, 507 U.S. 380, 395 (1993). The court must take into account all relevant circumstances surrounding the party's omission. *Id.* These include: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the

---

[5] Rule 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

5

movant." *Id.* at 392. Excusable neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* at 388.

Here, because Plaintiff's motions sought appointment of an expert witness and mediation, Defendant reasonably did not understand that Plaintiff intended for his motions to properly designate an expert witness. (*See* docs. 48, 50, 57, 59.) Plaintiff specifically asserted that he designated his expert witness only in his response to Defendant's motion for summary judgment, after the deadlines had expired. (*See* doc. 75 at 1-3.) Defendant's failure to oppose Dr. Kabacy's affidavits was in good faith and caused by excusable neglect. *See Pioneer Inv. Serv.*, 507 U.S. at 388 (1993) (stating that excusable neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.").

Moreover, Rule 16(b)(4), and not Rule 6(b), governs a party's request to modify a scheduling order. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:11-CV-0870-D, 2013 WL 3213311, at *2 n.5 (N.D. Tex. June 26, 2013) (noting that a party may not "rely on Rule 6(b) to circumvent the requirements for modifying a scheduling order under Rule 16(b) when that Rule controls.") (Fitzwater, C.J.). Under Rule 16(b) standard, this Court ruled that Defendant met its burden to show good cause for amending the scheduling order because Plaintiff first claimed that he timely designated an expert in his response to Defendant's motion for summary judgment, after the expert deadlines had expired. (Doc. 86 at 4-5.)

Plaintiff's motion for reconsideration of the order granting an extension of time to file objections to his expert designation is **DENIED**.

6

## IV. MOTION TO STRIKE

Defendant argues that Dr. Kabacy does not qualify as an expert because he is not a physician, citing Tex. Civ. Prac. & Rem. Code §§ 74.401(a), (g), 74.403(a). (Doc. 91 at 1-2.)

In the FTCA, Congress waived the United States' sovereign immunity for claims arising from torts committed by federal employees. 28 U.S.C. §§ 1346(b)(1), 2671–2680; *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008).

> The FTCA gives federal district courts jurisdiction over claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Sheridan v. United States*, 487 U.S. 392, 398 (1988) (quoting 28 U.S.C. § 1346(b)). Because the alleged medical malpractice took place in Texas, Texas law controls. 28 U.S.C. § 1346(b)(1); *see also Ayers v. United States*, 750 F.2d 449, 452 n.1 (5th Cir. 1985) ("Under the [FTCA], liability for medical malpractice is controlled by state law.").

**A.    Texas Medical Liability Act**

In Texas, "health care liability claims are subject to strict pleading and proof requirements." *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 561 (5th Cir. 2008) (citing to Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001-.507). A plaintiff in a medical malpractice action "bears the burden of proving (1) the physician's duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir.2008). The plaintiff must establish the standard of care as a threshold issue before the fact-finder may consider whether the defendant breached that standard. *Id.* Unless

7

the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony is required to prove the applicable standard of care as well as its breach. *See id.* at 601-02; *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir.2003). Expert testimony is also required to show that the breach proximately caused the harm suffered. *Guile v. United States*, 422 F.3d 221, 225 (5th Cir.2005). In short, subject to the narrow exception discussed above, a plaintiff must produce expert testimony to meet his burden of proof on a medical malpractice claim. *Hannah*, 523 F.3d at 601.

The medical standard of care for a detached retina or basal cell carcinoma is neither a matter of common knowledge nor within the general experience of a layperson, so Plaintiff must produce expert testimony to establish the applicable standard of care and to demonstrate that the treatment he received breached that standard. *See Prindle v. United States*, 2011 WL 1869795, *1-2 (N.D. Tex. May 13, 2011) (holding that expert testimony is required to establish the standard of care with respect to a FTCA claim that medical personnel were negligent in failing to diagnose and treat renal cell carcinoma); *Woods v. United States Gov't*, 2010 WL 809601, *3 (N.D.Tex. Mar. 8, 2010) (holding that expert testimony is necessary to establish the standard of care with respect to a FTCA claim that the VA doctor committed medical malpractice by prescribing a cholesterol medication that interacted with the plaintiff's diabetes and liver disease).

**B.     Expert Qualifications**

As noted, courts apply the state statutory requirements on the qualification of an expert witness in medical malpractice cases. *See Rodriguez*, 980 F.2d at 1019 (applying Tex. Rev. Civ. Stat. Ann. Art. 4590i § 14.01(a)(1), recodified in Tex. Civ. Prac. & Rem. Code Ann. § 74.401);[6] *see*

---

[6] The Texas legislature replaced the Medical Liability and Insurance Improvement Act of 1977 with the Medical Liability Act in 2003. *See Scorseby v. Santillan*, 346 S.W.3d 546, 552 (Tex. 2011).

*also Pesantes*, 621 F.2d at 179 (ruling that for the FTCA claims, the district court was required to apply the state's qualification requirements for standard-of-care experts.). In Texas, § 74.401 provides the qualification requirements for an expert in medical malpractice cases. *See Scoresby*, 346 S.W.3d at 561 (Johnson J. dissenting). Section 74.401(a) states:

> (a) In a suit involving a health care liability claim against a physician for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a *physician* who:
>
> > (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
> >
> > (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
> >
> > (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*Id.* (emphasis added). The expert therefore has to be a "physician", and this term is defined in § 74.401(g):

> (g) In this subchapter, "physician" means a person who is:
>
> > (1) licensed to practice medicine in one or more states in the United States; or
> >
> > (2) a graduate of a medical school accredited by the Liaison Committee on Medical Education or the American Osteopathic Association only if testifying as a defendant and that testimony relates to that defendant's standard of care, the alleged departure from that standard of care, or the causal relationship between the alleged departure from that standard of care and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code § 74.401(g). Relying on § 74.401(a) and (g), Defendant argues that because Plaintiff's expert witness does not currently hold any medical license, he is not a physician who may serve as an expert. (Doc. 91 at 1-2.) Plaintiff responds that the law does not require his expert to be a currently-licensed physician. (Doc. 98 at 11, 20.)

9

Section 74.401(g) defines a physician as someone "who *is* licensed to practice medicine[.]" Tex. Civ. Prac. & Rem. Code § 74.401(g) (emphasis added). The language of the statute is in present tense, suggesting that the expert witness must be presently a licensed physician. *Id.*; *see also Ramos v. Richardson*, No. 13-05-204-CV, 2008 WL 1822763, at *4 (Tex.App.–Corpus Christi-Edinburg, Apr. 24, 2008, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 74.401) (ruling that an inmate whose license was revoked was not a physician). The Medical Board Order submitted by Defendant shows that Dr. Kabacy's medical license in Oregon and Washington was revoked in 2008. (Doc. 92.) Dr. Kabacy is therefore not a physician. *See* Tex. Civ. Prac. & Rem. Code § 74.401(g); *Ramos*, 2008 WL 1822763, at *4.

Plaintiff also asserts that § 74.401(g) includes retired physicians. However, § 74.401(a) requires that Dr. Kabacy either be actively practicing medicine at the time he gives testimony or have been practicing medicine at the time Plaintiff's claims arose. Tex. Civ. Prac. & Rem. Code § 74.401(a)(1) ("[A] physician who is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose"). Plaintiff repeatedly notes that Dr. Kabacy retired in 2006, (doc. 98 at 15, 25), and this is consistent with his curriculum vitae, (docs. 48 at 7; 75 at 7; 75 at 8). As Dr. Kabacy is not currently practicing medicine, he must have been practicing medicine when Plaintiff's claims arose to qualify as an expert under § 74.401(a). *See* Tex. Civ. Prac. & Rem. Code § 74.401(a)(1). By Plaintiff's own admission, the small blemish on his nose that eventually turned into basal cell carcinoma did not develop until May 5, 2007, (doc. 12 at 2), and his eye problems did not begin until February 15, 2008, (*id.* at 5). By his own admission, Dr. Kabacy had already stopped practicing medicine before any of Plaintiff's claims arose. Dr. Kabacy does not

meet the statutory requirements to qualify as an expert witness.[7] *See* Tex. Civ. Prac. & Rem. Code § 74.401(a), (g).

## V. RECOMMENDATION

Defendant's motion to strike Plaintiff's expert witness should be **GRANTED**.

**SO RECOMMENDED on this 20th day of August, 2014.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7]Because Dr. Kabacy fails to meet the statutory requirements to serve as an expert witness, it is not necessary to reach Defendant's arguments under Fed. R. Evid. 703 and *Daubert*.

11